# United States Court of Appeals
## For the Eighth Circuit
_____

No. 25-1568
_____

Jane Doe

*Plaintiff - Appellee*

v.

Anoka County; James Stuart, the Anoka County Sheriff in his official capacity;
Detective Larry Johnson

*Defendants - Appellants*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 19, 2026
Filed: August 10, 2026
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Jane Doe was sexually assaulted in Anoka County, Minnesota. She provided evidence for a rape kit that was submitted to the Anoka County Sheriff's office. Although Detective Larry Johnson told Doe otherwise, the Anoka County Sheriff's office did not test Doe's rape kit for over 16 years. Doe then sued Anoka County and the Anoka County Sheriff, James Stuart, alleging an equal protection claim

under the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution, a Minnesota Human Rights Act (MHRA) claim, and a failure to train claim.[1] Additionally, she sued Sheriff Stuart and Detective Johnson for negligence and intentional infliction of emotional distress (IIED). The defendants moved for judgment on the pleadings. The district court granted the defendants' motion as to Doe's MHRA and negligence claims; it denied the defendants' motion as to Doe's other claims. The defendants appeal. Having jurisdiction under the collateral order doctrine, we reverse and remand.

I.

In 2004, Jane Doe, then fourteen years old, was sexually assaulted in Anoka County, Minnesota. She provided evidence for a rape kit, and it was submitted it to the Anoka County Sheriff's Office. Detective Johnson was assigned to her case. Doe gave a statement to the Sheriff's Office identifying her assailant; he was charged with sexual assault but never convicted.[2]

Detective Johnson told Doe's mother that no DNA was obtained from the rape kit. But in fact, no one had tested it. Doe was not the only person whose rape kit went untested in Anoka County. Indeed, the Anoka County Sheriff's Office reported that in 2015 it had 495 untested rape kits in its possession, including Doe's. In 2020, sixteen years after Doe was assaulted, the Anoka County Sheriff's Office finally tested her rape kit. It contained DNA evidence implicating the assailant that Doe had identified in 2004. Anoka County again pursued criminal charges against him, but the disposition of his case is unknown.

---

[1]As the district court noted, "Doe does not specify a source of law for this claim," but the district court construed it to be asserted under 42 U.S.C. § 1983 and the Monell and Canton line of cases. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); City of Canton v. Harris, 489 U.S. 378 (1989). Doe agrees with the district court's characterization.

[2]His criminal case was dismissed for reasons unrelated to the lack of DNA evidence.

Doe then filed this suit against Anoka County and Sheriff Stuart alleging an equal protection claim, a MHRA claim, and a failure to train claim. This is the second time this case has been before our Court. In April 2022, the defendants moved for judgment on the pleadings. The district court granted their motion, concluding that Doe lacked Article III standing. Doe appealed. While her appeal was pending, we decided Pratt v. Helms, 73 F.4th 592 (8th Cir. 2023). The parties disputed whether Pratt dictated the outcome of Doe's appeal, so we reversed the district court's order and remanded with instructions for the district court to "consider Doe's complaint in light of Pratt." Doe v. Anoka Cnty., No. 22-3012, 2024 WL 765008, at *1 (8th Cir. Feb. 26, 2024).

On remand, the district court concluded that, in light of our decision in Pratt, Doe had standing. It then granted the defendants' motion for judgment on the pleadings as to Doe's MHRA claim based on the statute of limitations and as to Doe's negligence claim based on Sheriff Stuart and Detective Johnson's entitlement to official immunity. It dismissed these claims with prejudice.

However, it denied the defendants' motion as to Doe's equal protection, failure to train, and IIED claims and rejected the defendants' remaining immunity arguments. First, the district court concluded that Detective Johnson was not entitled to qualified immunity as to Doe's constitutional claims or official immunity as to her IIED claim. Regarding Anoka County, the district court concluded that it was not entitled to immunity under Minnesota state law. Finally, the district court rejected Sheriff Stuart's arguments that he should be dismissed as a party; it reasoned that Doe sued him in his official capacity and alleged events that took place during his tenure in office. The defendants appeal. Doe does not appeal the district court's dismissal of her MHRA and negligence claims. Following the district court's order on the defendants' motion for judgment on the pleadings, Doe has three remaining claims: (1) a 42 U.S.C. § 1983 equal protection claim against Anoka County and Sheriff Stuart, (2) a 42 U.S.C. § 1983 Monell failure to train claim against Anoka County and Sheriff Stuart, and (3) an IIED claim against Detective Johnson and Sheriff Stuart. The defendants assert immunity as to all these claims.

II.

A.

On appeal, the defendants argue that the district court erred in concluding that Doe has standing. Further, they contend that the district court improperly rejected the defendants' qualified, official, and statutory immunity arguments. We review the district court's denial of the defendants' motion for judgment on the pleadings de novo. See Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010) ("As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss."); United States v. Jones, 70 F.4th 1109, 1111 (8th Cir. 2023) ("This court reviews *de novo* the district court's denial of a motion to dismiss.").

As an initial matter, the parties dispute whether we have jurisdiction to review the district court's conclusion that Doe has standing. Doe argues that we only have jurisdiction to consider the defendants' immunity arguments, whereas the defendants maintain that we can consider both standing and their immunity arguments.

"Although our jurisdiction is generally limited to reviewing a district court's final decisions ending litigation on the merits, we can immediately review a small class of collateral orders that do not terminate the underlying lawsuit." Carmichael v. White, 163 F.3d 1044, 1045 (8th Cir. 1998) (citation omitted). One such order is the denial of a motion for judgment on the pleadings based on the Eleventh Amendment and qualified immunity. See Martinez v. Sasse, 37 F.4th 506, 508 (8th Cir. 2022); see also McDaniel v. Precythe, 897 F.3d 946, 949 (8th Cir. 2018). "Our review is limited to the immunity defense and other issues that are 'inextricably intertwined' with it." McDaniel, 897 F.3d at 949 (citation omitted).

Although Doe argues that we lack jurisdiction to review the district court's standing analysis, our cases are to the contrary. In Johnson v. Griffin, 69 F.4th 506 (8th Cir. 2023), the defendants appealed the district court's denial of their motion to

-4-

dismiss, and we determined that we had jurisdiction to review the district court's conclusions as to both standing and immunity. Id. at 509. Moreover, when reviewing the denial of a motion to dismiss premised on Eleventh Amendment immunity, we have addressed standing sua sponte. See Duit Constr. Co. v. Bennett, 796 F.3d 938, 940-41 (8th Cir. 2015) (concluding that although the parties and the district court did not address the plaintiff's standing to sue, "standing is a jurisdictional issue that this court 'is bound to ask and answer for itself, even when not otherwise suggested'" (citation omitted)). In doing so, we emphasized that "'there is a common thread between [the] Article III standing analysis and [the Eleventh Amendment immunity] analysis.' Because both are jurisdictional, neither must necessarily be addressed before the other." Id. at 940-41 (citation omitted). Finally, as the defendants point out, Doe failed to identify a case where we refused to consider whether a plaintiff has standing as part of an interlocutory appeal. Rather, "[f]ederal courts . . . must always ensure that a dispute presents a case or controversy under Article III such than an assertion of jurisdiction is proper." McDaniel, 897 F.3d at 949. Accordingly, we conclude that we have jurisdiction to consider whether Doe has standing.

B.

The defendants contend that Doe lacks standing because they did not cause the injuries she alleges and, in any case, a judgment against them would not redress her injuries. We review the district court's standing conclusions de novo. McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank, 11 F.4th 702, 708 (8th Cir. 2021).

"[I]n order to invoke the power of a federal court, a plaintiff must present a 'case' or 'controversy' within the meaning of Article III of the Constitution." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009). "Th[e] 'irreducible constitutional minimum of standing' requires a showing of 'injury in fact' to the plaintiff that is 'fairly traceable to the challenged action of the defendant,'

-5-

and 'likely [to] be redressed by a favorable decision.'" Id. (second alteration in original) (citation omitted).

Doe asserts two constitutional claims—that Anoka County and Sheriff Stuart violated her equal protection rights on the basis of sex by failing to investigate sexual assault cases, the victims of which are almost exclusively women and girls, and that the Anoka County Sheriff's Office's training was inadequate regarding how to conduct investigations of sexual assault complaints. She also asserts a state-law IIED claim. The district court correctly identified that the Supreme Court's decision in Linda R.S. v. Richard D., 410 U.S. 614 (1973), and the two Eighth Circuit cases applying it "figure centrally in the standing analysis here." We go one step further: those decisions control the outcome of this case.

In Linda R.S., the Supreme Court held that a plaintiff lacks standing to bring an equal protection claim alleging discriminatory enforcement of a statute. 410 U.S. at 619. It reasoned that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Id. We applied the reasoning from Linda R.S. to conclude that the plaintiffs in Parkhurst v. Tabor, 569 F.3d 861 (8th Cir. 2009), and Pratt v. Helms, 73 F.4th 592 (8th Cir. 2023), similarly lacked standing.

Our cases establish that crime victims lack standing to assert equal protection claims against prosecutors and law enforcement officials for alleged failures to investigate. In Parkhurst, we determined that crime victims lacked standing to assert equal protection claims against Arkansas state prosecutors—explaining that although "defendants subjected to or threatened with discriminatory prosecution have standing to bring an equal protection claim, this right has not been extended to crime victims." 569 F.3d at 865 (citation omitted). Similarly, in Pratt, we held that the plaintiff lacked standing to bring § 1983 claims against officials from the Camden County Sheriff's Department for their alleged failure to investigate an assault against him. 73 F.4th at 595. We concluded that "a victim has no constitutional right to an investigation of a crime committed against him—at least where . . . the victim brings a class-of-one equal protection claim." Id.

Here, similar to the <u>Pratt</u> plaintiff, Doe sued Anoka County and Sheriff Stuart alleging they violated her equal protection rights based on their failure to investigate her claim that she was sexually assaulted and their failure to train its employees in proper investigative practices. In light of <u>Pratt</u>'s holding that a victim does not have a constitutional right to the investigation of a crime, <u>see</u> <u>id.</u>, Doe lacks standing to maintain her constitutional claims against Anoka County and Sheriff Stuart. [3]

The district court read <u>Pratt</u> differently. It reasoned that our statement that "a victim has no constitutional right to an investigation of a crime committed against him—at least where . . . the victim brings a class-of-one equal protection claim," <u>id.</u>, suggests "that <u>Linda R.S.</u>'s standing principles do not apply when a plaintiff alleges the failure to prosecute or investigate another resulted from class-based discriminatory animus." We disagree. Instead, we agree with the defendants' observations that the <u>Pratt</u> opinion does not suggest that we meant to create a new standing rule with its caveat regarding class-of-one equal protection claims and agree that it would be strange to interpret an opinion that *denied* standing as, in fact, announcing a new rule that *extends* standing to a new class of plaintiffs—one that was not before the Court in <u>Pratt</u>. We interpret <u>Pratt</u>'s qualification, at least as to class-of-one claims, to be included in the opinion because that was the specific claim before our Court—Pratt sued the county sheriff department officials alleging that they violated his equal protection rights by failing to investigate his assault because his assailants were related to the county's clerk of court. 73 F.4th at 593, 595. We do not understand the qualification to mean that every non-class-of-one failure to investigate equal protection claim automatically satisfies the standing requirements. Rather, <u>Pratt</u> held that police decisions concerning whether and how to investigate

---

[3]Doe repeatedly argues that the defendants improperly conflate law enforcement officers with prosecutors—maintaining that it is "improper[] [to] cloak police officers with protections uniquely reserved for prosecutors," Doe is correct that before <u>Pratt</u>, "we ha[d] not yet addressed whether a crime victim had standing to sue a government official for an inadequate investigation." <u>Pratt</u>, 73 F.4th at 594. But <u>Pratt</u> answered this question by holding that there is not a distinction between a plaintiff who alleges a discriminatory failure to prosecute claim and a discriminatory failure to investigate claim. <u>Id.</u> at 594-95. Thus, Doe's argument fails.

are inherently discretionary and ill-suited to judicial second-guessing. See id. That rationale applies with equal force where the plaintiff alleges that the failure to investigate affected a broader class of individuals. Moreover, neither Linda R.S. nor Parkhurst were class-of-one equal protection cases, and Pratt repeatedly cited these cases approvingly.[4]  Accordingly, we conclude that Pratt's qualification did not extend standing to a new class of plaintiffs.

Finally, in Parkhurst, we relied upon the District of Maryland's decision in Doe v. Mayor & City Council of Pocomoke City, 745 F. Supp. 1137, 1139 (D. Md. 1990); our reliance on this case further supports our conclusion that the standing analysis does not change when a plaintiff alleges class-based discrimination against officers for alleged failures to investigate.  In Pocomoke City, crime victims sued local government officials for their failure to investigate crimes committed against them based on a policy of discriminating against female victims. See 745 F. Supp. at 1138.  The court concluded that the plaintiffs lacked standing, holding that private citizens do not have the right to "require a public official to investigate or prosecute a crime," and it drew no distinctions based on the fact that the plaintiffs alleged class-based discriminatory animus. Id. at 1139.  The claims the plaintiffs brought in Pocomoke City are virtually identical to the claims Doe brings here.  Our decision in Pratt does not suggest that we intended to disclaim our prior reliance on Pocomoke City.

Although Doe relies on the Ninth Circuit's decision in Elliot-Park v. Manglona, 592 F.3d 1003 (9th Cir. 2010), to argue that she has standing, that case is inapposite.  There, the Ninth Circuit concluded that a plaintiff stated an equal protection claim by alleging that police officers exhibited racial bias in deciding not to arrest the perpetrator of a crime. Id. at 1006-07.  However, standing was not considered by the litigants, the district court, or the Ninth Circuit.  And, as the Fifth

_____

[4]Pratt also cited the Fifth Circuit's decision in Lefebure v. D'Aquilla, 15 F.4th 650 (5th Cir. 2021), approvingly.  In Lefebure, the Fifth Circuit held that "a crime victim lacks standing to sue . . . for failing to investigate or indict her perpetuator." Id. at 654.  Lefebure did not limit its holding to class-of-one claims.

Circuit observed, we cannot rely on Elliot-Park to hold that a plaintiff has standing when the opinion "do[es] not even mention standing." Lefebure, 15 F.4th at 657; see also United States v. Mejia, 172 F.4th 601, 608 n.3 (8th Cir. 2026) (explaining that because the "potential jurisdictional defect [was] neither noted nor discussed, . . . the decision does not stand for the proposition that no defect existed" (citation omitted)). Moreover, as the defendants correctly identify, "[n]either the district court nor Doe has ever identified a single decision in which a federal court has ever expressly held that a plaintiff alleging an equal-protection violation in a criminal investigation has standing."[5]

Because we hold that Doe lacks standing to assert her constitutional claims, we lack jurisdiction over these claims and decline to address the defendants' accompanying immunity arguments. See Gray v. City of Valley Park, 567 F.3d 976, 980 (8th Cir. 2009) ("[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction." (alteration in original) (citation omitted)).

The parties do not address whether Doe's lack of standing to assert her constitutional claims applies equally to her IIED claim against Sheriff Stuart and Detective Johnson. And Linda R.S., Parkhurst, and Pratt only discussed standing as it relates to federal constitutional claims. As such, we remand this issue to the district court for it to determine whether Doe has standing to assert this claim.

---

[5]To be sure, "[t]he State may not . . . selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 n.3 (1989). While there may be cases where a failure to investigate arising out of discriminatory animus is so severe that it implicates one's "strong interest in their own physical safety and protection" so as to give standing to bring an equal protection claim, that is not the case here. Lefebure, 15 F.4th at 652; see also Villanueva v. City of Scottsbluff, 779 F.3d 507, 511 (8th Cir. 2015). Doe has not pled sufficient facts to show that her interest in physical safety and protection has been jeopardized.

III.

For the foregoing reasons, we vacate the district court's judgment as to Doe's federal claims and remand with instructions to dismiss for lack of standing. As to Doe's state law IIED claim, we remand for the district court to consider whether she has standing.

ERICKSON, Circuit Judge, concurring.

I agree with the Court that generally crime victims lack standing to bring failure-to-investigate claims against police officers or other officials. I write separately to note that I do not believe Pratt v. Helms, 73 F.4th 592 (8th Cir. 2023), is a conclusive bar to all such constitutional claims based on an inadequate investigation. In Pratt, this Court found the plaintiff lacked standing to bring "a class-of-one equal protection claim." Id. at 595. Here, Jane Doe alleged that the defendants failed to timely investigate her sexual assault due to an alleged discriminatory animus against women and girls. Her complaint, however, does not set forth a factual basis showing a discriminatory animus or gender discrimination sufficient to support a plausible equal protection or discrimination claim. It is for this reason that I agree dismissal of her federal claims is appropriate.

_____